Tompkins, J.,
delivered the opinion of the Court.
This is an action, brought by the plaintiffs in error, against the defendants, for a breach of covenant. The plaintiffs, in their declaration, alledge, that the defendants, by their deed, in consideration of $14,000, did grant, bargain and sell, convey and confirm, to the plaintiffs, a certain tract, piece, or parcel of land, &c., and that the said defendants did, by their said deed, covenant and agree with the said plaintiffs, *411 their heirs and assigns, that they, the said defendants, were seized of an indefeasible estate, in fee simple, in and to the premises, sold and described in said deed, and that they, the said defendants, had good right, power, and lawful authority, to sell and dispose of the same, and that the premises, sold and described in said deed, were free from all incumbrances, done or suffered from said defendants. The breach of the covenants is then assigned. The plea of non est factum was filed. There were other pleas, which it is not material here to notice. Judgment for defendants : to reverse this judgment, the plaintiffs come into this Court. It appears by the exceptions taken in this case, that on the trial before the Circuit Court, the plaintiffs produced a deed of conveyance, containing the following words: that the defendants, for and in consideration of $14,000, “have granted, bargained and sold, and hereby do grant, bargain and sell, malee over, convey and confirm,” unto the plaintiffs, “their heirs and assigns forever, all,” 8¡-c. The deed was proved, and offered in evidence, and objected to. The Court excluded the deed. No other evidence was given or offered. It is assigned for error, that this deed was excluded. The plaintiffs rely on the words, “ grant, bargain, and sell,” and the defendants contended, that those words do not constitute such covenants as are assigned in the declaration ; and therefore, they say, the deed was not theirs. It is not contended by the plaintiffs, that the words “ grant, bargain, and sell,” at common law, create a covenant of seizin. They rely on the act of the Territorial Legislature, of 10th October, 1804, which reads in these words : “All deeds, whereby an estate of inheritance, in fee simple, shall hereafter be limited to the grantor, and his heirs, shall be adjudged an express covenant to the grantee, his heirs and assigns, to-wit: that the grantor was seized of an indefeasible estate, in fee simple, freed from incumbrances, done or suffered from the grantor, as also for quiet enjoyment against the grantor, his heirs and assigns.” See Geyer’s Digest, p. 127. Had the words of the statute been, “ where an estate of inheritance in fee simple, shall hereafter be limited to the grantee,” there would have been no doubt. It has been lately found, that the word grantor is not (as was formerly supposed) misprinted; and the inquiry here is, whether this Court can cure this defect in the statute la w, by reading grantee, for grantor. It is admitted, that Courts may take great liberties in construing statutes, to promote the public good, by carrying into effect the obvious intentions of the Legislature; and many authorities have been read to prove how far they have gone in construing them, to attain the objects which the Legislature appear to have had in view.
Chief Justice Marshall, in delivering an opinion of the Supreme Court of the United States, says : “ On the abstract principles which govern Courts, in construing legislative acts, no difference of opinion can exist. It is only in the application of those principles that the difference discovers itself.” The ease of the United States v. Eisher has been cited, among others, by the counsel for the plaintiff in error, in which this rule is laid down: that if the literal expressions of the law would lead to absurd, unjust, or inconvenient consequences, such a construction should be given, as to avoid such consequences. The question in that case was, whether the United States, as holders of a protested bill of exchange, which has been negotiated in the ordinary course of exchange, are entitled to be preferred to the general creditors, where the defendant becomes bankrupt? The claim to preference, in that case, was founded on the fifth section of an act entitled an act to provide more effectually for the settlement of accounts between the United States and Receivers of Public Money. The section reads in these words: “ And be it further enacted, that where *412 any revenue officer, or any other person, hereafter becoming indebted to the United States, by bond or otherwise, shall become insolvent, &c.,the United States shall be first satisfied..” The- Chief Justice, in delivering the opinion of the Court, said that “the title of the act is limited, to Receivers of Public Money a term.which certainly excluded the defendant in that case.. “ The counsel for the defendants,” he further said, “ had. completely succeeded in demonstrating that the four first sections of that act related only to particular classes of debtors, among- whom the drawer and endorser of a. bill of exchange would not be comprehended.?’ After hearing the rule above staled, as cited by the plaintiff’s counsel, and thus much stated by the Chief Justice, one would be inclined to think that the Court had decided that the United States were not entitled to- a preference. But not so. The United States were, in the opinion, of the Court, entitled, by the literal words of the statute, to that preference; and notwithstanding; the- title and-the four first sections, and the counsel for plaintiff, on a closer-examination, will find that it was one of the Judges by a wrong application of the rule,.thought the word other, in the fifth section, should be dropped, and the- lave be limited, in conformity with the title and the four first sections, to “Meceivers of Public Money..” Now,.had the Court thought fit to.restrain this act to- “ Receivers- of Public Money,” it would have been a strong case for the plaintiff. Yet still it would not have been strong enoughfor here they would only have taken away one word. But this Court is requested to strike out one word, and in lieu thereof to insert another, in order to give effect to the statute under consideration. Conveyancers, we agree, may have all given the statute the construction contended for by the plaintiffs, under the erroneous impression that the word grantor had been.misprinted,.and. had this construction been sanctioned by judicial decisions, for such a length, of time as to induce a belief that the Legislature acquiesced in the construction, we are not prepared to say that we should have now been ready to decide otherwise. But, as-we cannot reasonably believe the acts and constructions of conveyancers are as much observed by tbe Legislature as the decisions of Courts, and still more,.as we believe such a construction was given under the erroneous impression, of the word grantor being misprinted, we are not inclined to allow to such authority much credit. The question is not here whether, by reading grantor, we shall give the statute a meaning contrary to the intention of the Legislature; for as it stands, that section of the statute has no meaning. But the thing required is, that we shall read,grarofeeinstead of grantor, and thereby give a meaning where there was none before. This appears to us too much like legislating. Were Courts to take such liberties, it would he in v.ain to make constitutional provisions,. to restrain Legislatures from enacting laws impairing the obligation of contracts, since the Courts, by taking such extraordinary liberties with the statutes,, would, in effect, make laws to take effect years before they, were known to. exist..
The judgment of the Circuit Court is affirmed.